ACCEPTED
03-15-00341-CV
7260424
THIRD COURT OF APPEALS
AUSTIN, TEXAS
10/6/2015 8:57:09 PM
JEFFREY D. KYLE
CLERK

03-15-00341-CV

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
10/7/2015 4:41:09 PM
JEFFREY D. KYLE
Clerk

IN THE
THIRD DISTRICT COURT OF APPEALS
AUSTIN, TEXAS

---

Antioch St. Johns Cemetery Company d/b/a American Memorial Park, Grand Prairie, Texas;
Gerald Weatherall; and Beverly Randall-Weatherall
*Appellants*

v.

Texas Department of Banking Commissioner
*Appellee*

---

On Appeal from the 261st Judicial District Court,
Travis County, Texas

---

**BRIEF OF APPELLANTS
ANTIOCH ST. JOHNS CEMETERY, GERALD WEATHERALL, AND BEVERLY
RANDALL-WEATHERALL**

---

Kevin S. Wiley, Jr.
LAW OFFICES OF KEVIN S. WILEY, JR.
325 N. St. Paul Street, Suite 4400
Dallas, Texas 75201
Telephone: (469) 619-5721
Telecopier: (469) 619-5725
Email: kevinwiley@lkswjr.com
ATTORNEY FOR APPELLANTS

## APPELLANTS INDEX

## CERTIFICATE OF INTERESTED PERSONS

Appellants hereby certify the following constitutes a list of interested persons who are financially interested to the outcome of the appeal:

1) Antioch St. Johns Cemetery d/b/a Memorial Park Cemetery – Appellant
Kevin S. Wiley, Jr.
325 North St. Paul Street, Suite 4400
Dallas, TX 75201
Counsel for Appellant

2) Gerald Weatherall
Kevin S. Wiley, Jr.
325 North St. Paul Street, Suite 4400
Dallas, TX 75201
Counsel for Appellant

3) Beverly Randall-Weatherall
Kevin S. Wiley, Jr.
325 North St. Paul Street, Suite 4400
Dallas, TX 75201
Counsel for Appellant

4)  Texas Department of Banking
Ann Hartley
Assistant Attorney General
General Litigation Division
Office of the Attorney General of Texas
P.O. Box 12548
Austin, Texas 78711-2548
Counsel for Appellee

## TABLE OF CONTENTS

INDEX OF AUTHORITIES ...............................................................................................iii

RECORD AND PARTY REFERENCES ................................................................... 1

STATEMENT OF THE CASE ................................................................................ 1

ISSUE PRESENTED ............................................................................................. 1

Whether the trial court erred in deciding that the Administrative Law Judge's findings of fact and conclusions of law and penalties assessed against the Appellants for violations of the Texas Health and Safety Code were warranted with the facts submitted to the ALJ during a contested case hearing.

FACTUAL BACKGROUND …………………………………………………………2

ARGUMENT …………………………………………………………………………… 3

CONCLUSION AND PRAYER ……………………………………………………. 7

CERTIFICATE OF SERVICE …………………………………………………….…8

# INDEX OF AUTHORITIES

Cases:

*Castleberry v Branscomb*
721 S.W. 2d 270 (Tex. 1986)…………………………………………………………… 7

*R.R. Com'n of Texas v. Torch Operating Co.*,
912 S.W.2d 790, 792 (Tex.1995)…………………………………………………. 4

*Texas Health Facilities Com'n v. Charter Medical-Dallas, Inc.*,
665 S.W.2d 446, 452 (Tex.1984)…………………………………………………. 4

Statute:

Texas Government Code § 2001.174 …...............……………….......………………… 3

Tex. Gov't Code Ann. § 2001.174(2)(E)...................……………….......………………... 4

Texas Health & Safety Code § 711.003………………………………………………… 5

Texas Health and Safety Code § 711.021…………………………………………. 6

## RECORD AND PARTY REFERENCES

Appellants Antioch St. Johns Cemetery Company d/b/a American Memorial Park, Grand Prairie, Texas, Gerald Weatherall and Beverly Randall-Weatherall file this, its Brief of Appellants. Antioch St. Johns Cemetery Company d/b/a American Memorial Park, Grand Prairie, Texas, Gerald Weatherall and Beverly Randall-Weatherall will be referred to as "Appellants."

Appellee, the Texas Department of Banking will be referred to as the "Appellee."

The clerk's record is volume 1-3. References in the Brief of Appellants to the clerk's records are shown as the Banking of Department page numbers to Volume 3 of the Clerk's Record: "[DB ___]" with the page number(s) in the brackets.

## STATEMENT OF THE CASE

This case involves Appellant seeking redress for fees and fines imposed by the Appellee beyond the legal and factual parameters promulgated by the State of Texas.

## ISSUE PRESENTED

Whether the trial court erred in deciding that the Administrative Law Judge's findings of fact and conclusions of law and penalties assessed against the Appellants

for violations of the Texas Health and Safety Code were warranted with the facts submitted to the ALJ during a contested case hearing.

## FACTUAL BACKGROUND

Appellant Antioch St. Johns Cemetery Company d/b/a American Memorial Park, Grand Prairie, Texas ("St. Johns") is an entity operating in the State of Texas as cemetery facility. Appellants Gerald Weatherall, performed his duties as St. Johns' President, and Appellant, Beverly Randall-Weatherall, was its Vice-President.

Appellee is an agency promulgated by the Texas Finance Code in and for the State of Texas that administers the operations of cemeteries under the provisions of the Texas Health & Safety Code.

On November 25, 2013, the Texas Banking Commission submitted findings of fact that assessed administrative penalties against Appellants, Gerald Weatherall and Beverly Randall-Weatherall as responsible parties operating the St. Johns cemetery.

Gerald Weatherall and Beverly Randall-Weatherall were aggrieved by the Decision rendered by the Texas Banking Commissioner in that the Decision was in error and was not supported by the evidence. Specifically, Gerald Weatherall and Beverly Randall-Weatherall showed that the Texas Banking Commissioner that they should not have had penalties imposed against them since the evidence showed that they timely ameliorated any financial discrepancies under Texas Administrative Code § 26.2.

Gerald Weatherall and Beverly Randall-Weatherall also showed that corrective action was taken in compliance with the Reports for Examination and audits that occurred on June 20, 2011 and June 30, 2011 to correct the defective

condition of the cemetery plots.  Appellants further disputed the decision of the Texas Banking Commissioner which affirmed the Administrative Law Judge's Opinion and Order as it pertains to the sufficiency of the evidence, findings of fact, and conclusions of law.

Appellants asserts that the Decision of the Texas Banking Commissioner is not supported by the evidence and is against the overwhelming weight of the evidence as to be clearly wrong or manifestly unjust. For this, they appealed the Judicial Review of same to the 261st Judicial District of Tarrant County, Texas. Upon the judicial review, Gerald Weatherall and Beverly Randall-Weatherall requested that the administrative penalties assessed against them in their individual capacities be denied. However, the trial court found that the penalties imposed by the ALJ were within the scope of penalties awarded for such violations.

## II. ARGUMENT

Texas Government Code § 2001.174 provides the scope of judicial review from an agency decision. The code states in pertinent part:

> If the law authorizes review of a decision in a contested case under the substantial evidence rule or if the law does not define the scope of judicial review, a court may not substitute its judgment for the judgment of the state agency on the weight of the evidence on questions committed to agency discretion but:
>
> (1)  may affirm the agency decision in whole or in part;  and
>
> (2)  shall reverse or remand the case for further proceedings if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
>
> (A)  in violation of a constitutional or statutory provision;

(B)  in excess of the agency's statutory authority;

(C)  made through unlawful procedure;

(D)  affected by other error of law;

(E)   not reasonably supported by substantial evidence considering the reliable and probative evidence in the record as a whole;  or

(F)  arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

Additionally, the Texas Administrative Procedure Act (APA) authorizes a reviewing court to test an agency's findings, inferences, conclusions, and decisions to determine whether they are reasonably supported by substantial evidence considering the reliable and probative evidence in the record as a whole.   *See* Tex. Gov't Code Ann. §  2001.174(2)(E) (Vernon Pamph.1998); *Texas Health Facilities Com'n v. Charter Medical-Dallas, Inc.*, 665 S.W.2d 446, 452 (Tex.1984).    The reviewing court must presume that the agency's decision is supported by substantial evidence. *See Charter Medical-Dallas, Inc.*, 665 S.W.2d at 453.    Substantial evidence requires only more than a mere scintilla. *See R.R. Com'n of Texas v. Torch Operating Co.*, 912 S.W.2d 790, 792 (Tex.1995).

In this case, the findings of fact by the ALJ were completely contradictory. At

some points in his decision, he states the Mr. and Mrs. Weatherall addressed the agencies concerns regarding the violations of Texas Health & Safety Code § 711.003, or were ignorant of the law regarding the violations of the Health & Safety Code. [DB 420 paragraph 39]. However, within the same opinion, the ALJ found that despite the efforts of Mr. and Mrs. Weatherall, the violations were so numerous that same showed a "willful disregard for the law that applies to perpetual care cemeteries." [See DB 420; par. 38]. For these reasons, Mr. and Mrs. Weatherall contend that the ALJ opinion is arbitrary and capricious in that same observes that best efforts were made by Mr. and Mrs. Weatherall to correct the violations of the Texas Health & Safety Code. The testimonial evidence from Mr. Weatherall also supports that he repaid the perpetual cemetery trust fund which was a point of contention brought by the Banking Commission. However, the ALJ states that due to the number of violations, Mr. and Mrs. Weatherall's conduct was "willful" despite any evidence or testimony indicating that the conduct was "willful." Accordingly the findings of the ALJ are not supported by the evidence. The Trial Court heard and reviewed this evidence and contradictory conclusions of the ALJ, but ignored same in upholding the ALJ opnion.

In addition to the foregoing, Appellant's contend that the ALJ and Trial Court

committed an error on the law in assessing penalties against Mr. and Mrs. Weatherall in their individual capacities.

Texas Health and Safety Code § 711.021 provides that a cemetery can be operated by a person that is a corporate entity. This section states in pertinent part:

> (a)  An individual, corporation, partnership, firm, trust, or association may not engage in a business for cemetery purposes in this state unless the person    is a corporation organized for those purposes.
>
> (b)  A corporation conducting a business for cemetery purposes, including the sale  of plots, may be formed only as provided by this section.
>
> The corporation must be a filing entity or foreign filing entity, as those terms are defined by Section 1.002, Business Organizations Code.

8.     In Texas, a shareholder's personal liability for  obligations of a Texas corporation is governed by Article 2.21 of the Texas Business  Corporation Act [or Sections 21.223, 21.224, and 21.225 of the Texas Business Organizations Code, where that Code is applicable] ("Article 2.21"). Article 2.21 now provides that no personal liability for contractual obligations exists unless the plaintiff can demonstrate that the shareholder, owner, subscriber, or affiliate caused the corporation to be used for the purpose of perpetrating and did perpetrate an actual fraud on the plaintiff primarily for the direct personal benefit of the shareholder,

owner, subscriber, or affiliate. *See Castleberry v Branscomb* 721 S.W. 2d 270 (Tex. 1986).

Mr. and Mrs. Weatherall are shielded by the existence of St. Johns as a corporate entity unless it is found that the corporation has been used to perpetuate a fraud. *Id.* There was no evidence adduced in the contested hearing that Mr. and Mrs. Weatherall utilized to perpetuate a fraud. As a result, they cannot be assessed personally for the fines assessed against the corporate entity.

## CONCLUSION AND PRAYER

By ALJ's assessment of fines and penalties against Appellant's Gerald and Beverly-Randall Weatherall, the trial court committed clear error. For these reasons, the Order upholding the fines and assessment of penalties against the Appellants should be overturned in this case and the matter remanded for rehearing on the merits.

Respectfully submitted
LAW OFFICES OF KEVIN S. WILEY, JR.


_____
Kevin S. Wiley, Jr.
State Bar of Texas # 24029902
325 N. St. Paul Street, Suite 4400
Dallas, TX 75201
Tel. (469) 619-5721
Fax (469) 619-5725
Email: kevinwiley@lkswjr.com
ATTORNEY FOR APPELLANTS


CERTIFICATE OF COMPLIANCE

Pursuant to Tex. R. App. P. 9.4(i)(3), I hereby certify that this brief contains 2888 words. This is a computer-generated document created in Microsoft Word, using 14-point typeface for all text. In making this certificate of compliance, I am relying on the word count provided by the software used to prepare the document.


_____
Kevin S. Wiley, Jr.


CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Appellant Brief has been served on the Banking Commission by and through their counsel of record below on this 1st day of October, 2015 via electronic mail to the parties listed below.

Ann Hartley
Assistant General Counsel
Texas Department of Banking
2601 N. Lamar Blvd.
Austin, Texas 78705

/s/ Kevin S. Wiley, Jr.

APPELLANT APPENDIX


TAB 1 - Proposal For Decision Following Exceptions and Final Order [DB 399-430]

TAB - 1

Docket No. BE-13-11-326

| | | |
|---|---|---|
| IN THE MATTER OF ANTIOCH | § | BEFORE THE BANKING |
| ST. JAMES CEMETERY COMPANY | § | |
| d/b/a AMERICAN MEMORIAL PARK, | § | |
| GRAND PRAIRIE, TEXAS, (Certificate | § | |
| of Authority No. 74, expired); | § | |
| | § | |
| GERALD WEATHERALL, ST. AS ITS | § | COMMISSIONER OF TEXAS |
| PRESIDENT AND IN HIS INDIVIDUAL | § | |
| CAPACITY; AND, | § | |
| | § | |
| BEVERLY RANDALL-WEATHERALL | § | |
| AS ITS VICE-PRESIDENT | § | AUSTIN, TRAVIS COUNTY, TEXAS |

## PROPOSAL FOR DECISION
## FOLLOWING EXCEPTIONS

This Proposal for Decision Following Exceptions is issued following consideration of

the record consisting of testimony, documentary evidence, and argument of the parties, which

were received at a contested case hearing on June 10, 2013, and Exceptions to the Proposal

for Decision that were filed on October 7, 2013.

## STATEMENT OF THE CASE

This is an enforcement action involving a perpetual care cemetery, which staff of the

Department of Banking initiated against the respondents: Antioch St. James Cemetery

Company d/b/a American Memorial Park, Grand Prairie, Texas; Gerald Weatherall, Sr., as its

President and individually; and, Beverly Randall-Weatherall as its Vice-President. Staff

alleges that the respondents violated provisions of the Texas Health and Safety Code,

Chapters 711 and 712, and Texas Finance Commission Rules, 7 Tex. Admin. Code Chapter

26; and, of Commissioner Order 2012-011, signed on May 16, 2012. Staff seeks

administrative penalties against the company, Mr. Weatherall in his capacity as president and

400

his individual capacity, and against Ms. Randall-Weatherall in her capacity as vice-president of the company. Antioch St. James Cemetery Company d/b/a American Memorial Park will be referred to as the "Cemetery Company." References to the transcript of the contested case hearing will be "[TR (page number)]."

## CHARGES OF VIOLATIONS

The department staff charged the respondents with up to fifteen types of violations involving ten separate Health and Safety Code provisions and five Finance Commission Rules, with failure to comply with and violations of an Emergency Order To Cease and Desist that is dated May 16, 2012, and with operating a perpetual care cemetery without a certificate of authority. Department staff argued that the respondents' actions established a pattern of wilful disregard for the requirements of law concerning operation of the Cemetery Company, within the meaning of Health Code §§711.056 and 712.0442, and that the Commissioner should impose administrative penalties and costs of this proceeding against all the respondents, jointly and severally. The specific violations with corresponding provisions of the Health and Safety Code, the Finance Commission Rules, and the Cease and Desist Order, are set forth in the Notice of Hearing that was signed on May 2, 2013.

## DISCUSSION

### APPEARANCES

Department staff, represented by Deborah H. Loomis, Assistant General Counsel, presented evidence of violations with testimony from Mark E. LaPlante and Russell Reese and with documents, including Reports of Examination from 2010, 2011, and 1012; spreadsheets showing information from operations of the cemetery; records concerning four complaints

DOB Docket 13-11-326
Antioch St. James Cemetery Company, et al.
Proposal for Decision Following Exceptions

Page 2

from 2011 and 2012; and, other correspondence. Ultimately, the staff recommended the imposition of administrative penalties within a range between $56,000 and $70,000 for fourteen violations. [TR 91-92].

Mr. Gerald D. Weatherall, Sr., appeared for the Cemetery Company, as former president of the company, and for himself individually. Mr. Weatherall also owns and operates the Eternal Rest Funeral Home that is located in Plano, Texas. [TR 108; DOB Exhibit 1, p. 47]. Ms. Weatherall appeared as former vice-president of the Cemetery Company. Mr. Weatherall presented evidence in the form of testimony and documents. He declined to offer an original plat of the cemetery, which included what appeared to be a newer depiction of Section J that was taped over the original version on that plat. In general, Mr. Weatherall testified about his efforts to address the violations after receiving notifications from the Department. He testified that they hired a man to run the cemetery and contract workers and that the only time he got involved was at the inspections. [TR 100, 101]. Mr. Weatherall testified that Ms. Randall-Weatherall did not participate in any of the operations of the Cemetery Company and should not be held responsible for any of the violations. Mr. Weatherall felt that he tried to do everything that the Department asked them to do. He testified that once he found out they were not equipped to handle a cemetery, they put it into Chapter 7 bankruptcy, terminated the company's corporate charter, and lost title to the cemetery property through foreclosure.

The Administrative Law Judge concludes that Mr. Weatherall is responsible for violations of the law and recommends assessment of an administrative penalty against him, as president of the cemetery company and individually, and against the cemetery company, as set forth in the recommendation that follows.

DOB Docket 13-11-326
Antioch St. James Cemetery Company, et al.
Proposal for Decision Following Exceptions

## APPLICABLE LAW

Pertinent law for the regulation of perpetual care cemeteries is found in the Health and Safety Code, Chapters 711 and 712, and Finance Commission Rules: Title 7, Part 2, Chapter 26 of the Texas Administrative Code. The applicable provisions are set out in detail in the Notice of Hearing, appear in the Emergency Cease and Desist Order, and will be set forth in the Conclusions of Law concerning each asserted violation.

## DISCUSSION OF THE EVIDENCE

### The Cemetery, the Cemetery Company and the Weatheralls' Ownership

This matter involves a cemetery that at least a part of which, named Antioch Cemetery, was dedicated in 1896. [Weatherall Exhibit 3]. The property is located between Avenue D and Hardy Road in Grand Prairie, Dallas County, Texas. The record shows that the cemetery property was not owned by the Cemetery Company.

The Cemetery Company was organized as a corporation beginning in 1952. [TR 111]. Mr. Weatherall was president and a director of the corporation and Ms. Randall-Weatherall was vice-president and a director of the corporation. The Secretary of State forfeited the corporate charter in early 2011 for failure to pay franchise taxes and reinstated the charter by November, 2011, after payment was made. At some time in 2012, the respondents terminated or dissolved the corporation through the Secretary of State, after the bankruptcy filing and forfeiture of the cemetery property. [TR 110].

On June 3, 2009, Mr. Gerald Weatherall, Sr., and Ms. Beverly Ann Randall-Weatherall purchased the cemetery property and the cemetery company from Mr. Robert Wright and Mr. Ray Windham. [TR 11]. The records for the purchase and change of

DOB Docket 13-11-326
Antioch St. James Cemetery Company, et al.
Proposal for Decision Following Exceptions                                     Page 4

ownership of the cemetery company and Certificate of Authority No. 74, including the documentation that the respondents filed with the Department, showed 50% ownership by Weatherall Family Funeral Service, LLC, and 50% ownership by Beverly-Randall Weatherall. At the time of the 2011 examination, Mr. Weatherall reported that he owned 50% of the cemetery property and company, but documentation of that was not provided. [TR 32]. The information required to complete a change of ownership was submitted to the Department, which recorded the change of ownership and of Certificate of Authority No. 74 on or about December 21, 2009. [Id.]. At some time after the February 7, 2012, Report of Examination, the Cemetery Company filed for bankruptcy under Chapter 7 and the bankruptcy proceedings ended with the Cemetery Company being converted b ack to the respondents, because there were no assets to sell. Also after February 7, 2012, the respondents transferred title to the property on which the cemetery is located by deed in lieu of foreclosure to Avery Weatherall, Gerald Weatherall, Sr.'s son. Avery Weatherall lent the money for the Weatheralls' purchase of the property in 2009.

Overview of the Asserted Violations

The focus of this proceeding was directed to the general condition of the cemetery grounds, the record-keeping, and the maintenance of the Perpetual Care Trust Fund ("PCTF") by the cemetery company, and the operations within two areas of the northeast portion of the cemetery. [See generally, DOB Exhibits 2 and 3]. The two areas were identified as "Section J" and "New Section J" and in this proposal for decision will be referred to in combination as "Section J." [Weatherall Exhibit 3 and DOB Exhibit 4]. The records, although too poorly kept to enable an exact count, show that few burials took place in Section J before 2009, when

DOB Docket 13-11-326
Antioch St. James Cemetery Company, et al.
Proposal for Decision Following Exceptions

Page 5

404

the respondents took over operation. The records show a total of approximately 24 burials in that section between 1984 and 2008, with no burials recorded during 10 of those 25 years. [DOB Exhibit 3]. Approximately 132 burials were done from 2009 through 2012, with 106 of those done in 2010 and 2011. [Id.]. Mr Weatherall testified that 80-83% of the graves were sold directly to his funeral home [TR 129] and that many of the graves were donated for hardship cases.

Reports of Examination from the Staff and Responses from the Cemetery Company

From the outset of the respondents' ownership, Department staff reviewed the respondents' operations of the cemetery. Staff performed three audits or examinations of the operations of the Cemetery Company and prepared a Report of Examination ("ROE") for each of the audits/examinations. As a result of the examinations and the inadequacy of the respondents' attempts of compliance, the Commissioner of Banking issued a Cease and Desist Order in 2012, and the staff initiated this enforcement proceeding.

First Audit: Period Ended June 30, 2010

The first audit of the Cemetery Company's operations covered the period to June 30, 2010. [DOB Exhibit 1, pp. 7-20]. In general, the ROE noted that cemetery operations were adequate, the property and grounds were adequately maintained, and no complaints were on file. The ROE documented what was stated to have been 11 violations of law [TR 16], involving at least 67 instances of violation. [DOB Exhibit 1, pp. 7-20]. The ROE from this audit was sent to the respondents by letter dated August 2, 2010, and directed correction by no later than September 6, 2010. [DOB Exhibit 1, pp. 8-9]. The evidence does not present an accurate picture of the respondent's response to this ROE. [TR 21].

DOB Docket 13-11-326
Antioch St. James Cemetery Company, et al.
Proposal for Decision Following Exceptions

Page 6

Second Audit: June 20, 2010 to June 30, 2011

The results of the second audit, which covered the period of June 20, 2010 to June 30, 2011, are contained in the ROE that was sent to the respondents by letter dated October 19, 2011. [DOB Exhibit 1, pp. 22-41]. This ROE noted that the overall condition of the operation of the Cemetery Company had deteriorated. The corporate charter had been forfeited as of January 28, 2011, for failure to pay franchise taxes. The grounds were in poor condition and a complaint was on file. In the complaint, a family was concerned about the condition of the grandfather's grave. [TR 22; DOB Exhibit 1, pp. 69-72]. Mr. LePlante inspected the cemetery on August 11, 2011, in response to the complaint and concluded, in general, that the complaint was well founded. [DOB Exhibit 1, p. 73]. Mr. LePlante noted that poor condition of the grounds, mostly in Section J, which included sunken-in graves, what appeared to have been part of a casket protruding from the ground, graves laid out in different directions, poor marking of graves without headstones, very old headstones having been broken, with some appearing to have been pushed off of graves and partially covered by dirt in the excess dirt pile in the far northeast corner of the cemetery. [TR 25]. Lot pins that locate sections of the cemetery were lying on the ground in various places. Mr. Weatherall responded to the complaint and parts of Mr. LePlante's report of his August 11 site visit by letter dated September 6, 2011. Mr. Weatherall's response included his understanding that the headstones found in the dirt pile were in a shed that was there when they purchased the property, which was torn down to make room for more burial plots. [DOB Exhibit 1, p. 82].

The 2011 ROE listed 19 violations of law, including 8 repeat violations (from the audit in 2010), which involved more than 350 instances of violations. [DOB Exhibit 1, pp. 21-

41; DOB Exhibit 2]. There was a shortage of $2,770.19 in the PCTF, which the respondents made up before the end of November, 2011. [TR 32; DOB Exhibit 1, p. 58]. The re-plat of Section J was deficient in several respects. [TR 34-44; DOB Exhibit 4 (Re-Plat of Section J, filed for record on 09/01/11); DOB Exhibit 5 (Plat of "Old Cemetery Section," showing county record numbers)]. DOB Exhibit 5 is understood to have been the plat of Section J as it was set out at the time when ownership of the cemetery changed from Mr. Wright to the respondents. [TR 43]. Conveyance documents had not been issued for 6 of the 50 instances that the 2010 ROE documented had not been issued as of June 30, 2010. [TR 54]. The ROE includes a report of each category of violation with a description of supporting evidence.

The June 30, 2011, ROE was sent to Mr. Weatherall by letter dated October 19, 2011, with instructions to correct the violations by November 23, 2011. [TR 22-23; see DOB Exhibit 1, p. 60]. Mr. Weatherall testified that corrective action had been taken. [TR 58-60]. The respondents sent a copy of the Minutes of November 11, 2011, board meeting at which discussions of the violations and corrective actions were recorded. [DOB Exhibit 1, pp. 58-60]. The minutes summarized a discussion that Mr. Weatherall was not aware that a deposit to the PCTF was due for donated graves, that he misunderstood the amount for deposit could include $1.75 per square foot as an alternative to 15% of the total sales price, and that 85% of the graves were donated. The minutes noted a plan for making and monitoring deposits and for auditing all books and deposits monthly. The minutes stated that all shortages have been corrected, correction for the contract for sale has been corrected, the interment/disinterment register has been corrected, all deeds have been corrected and issued to buyers, documentation of proof of ownership of the cemetery was provided, ownership of the "Museum" (an unused

mausoleum, *see*, DOB Exhibit 1, p. 64) was provided, correction regarding corporate status was provided, and that response to the consumer complaint was timely done. Also noted is an intention by the board to ask for an extension of time to re-plat the property. The minutes made references to tabs of supporting documents for most items, but the tabs were not included in the exhibit. Per a December 20, 2011, letter, the staff concluded that most of the stated corrections were not adequate, listed the deficiencies, and referenced an upcoming limited scope examination. [DOB Exhibit 1, pp. 61-66]. Per a January 24, 2011, letter, the staff noted receipt of the required documentation regarding the platting issue and proof of deposit to the PCTF. [DOB Exhibit 1, p. 67]. Department staff instructed Mr. Weatherall to provide by January 14, 2012, documentation of all actions taken to address the uncorrected violations stated in the December 20 letter. [TR 61-66]. Mr. Weatherall sent notice on January 24, 2012, which stated they had stopped selling graves in and closed Section J.

Limited Scope Examination: Period Ending February 7, 2012

As a result of the findings of a uniform risk rating of 5 in the previous examination, a limited scope examination was conducted sooner than according to the usual schedule. [TR 56]. The limited scope examination was conducted to determine the extent that management corrected the 19 categories of violations that were documented in the June 30, 2011, ROE and to review operations between July 1, 2011, and the date of the exam. Mr. LePlante was on-site in November, 2011, determined the extent that the respondents corrected violations from the 06/30/11 ROE, reviewed all post-June 30, 2011, purchase and conveyance documents, and compared burial cards and interment recor4ds for all of the recorded burials in Section J. The ROE from the limited scope examination documents the findings of the Department staff. [TR

408

42-57]. Mr. LePlante determined that, as of the November 23, 2011 deadline, corrective action had not been taken for 11 of the 19 categories of violations from the 06/30/11 ROE. [DOB Exhibit 1, p. 47]. The 02/07/12 ROE also documents 16 categories of new violations, including 11 repeat violations, which involved many instances of violation. [DOB Exhibit 1, pp. 42-57; *See also*, TR 57]. In general, the overall condition of the cemetery had not improved and was described to be critically poor. [DOB Exhibit 1, p. 47]. The condition in Section J was slightly improved. [Id., at p. 49]. More specifically, the ROE includes a report of each category of violation with a description of supporting evidence. From an exit meeting by telephone on February 16, 2012, the ROE notes that Mr. Weatherall agreed with the findings and planned to implement corrective actions. [DOB Exhibit 1, p. 56]. The staff concluded that it will refer the matter to the legal division for action. [DOB Exhibit 1, p. 56].

Certificate of Authority No. 74

The Cemetery Company operated under authority of Certificate of Authority No. 74 from the time of change of ownership in 2009. The department did not renew the certificate as of the March 1, 2012 renewal date. [DOB Exhibit 1, p. 3]. Mr. Weatherall testified that they did not receive notice that the application for renewal of the certificate had been denied. [TR 108; Weatherall Exhibit 1].

Cease and Desist Order

On May 16, 2012, the Commissioner signed Order No. 2012-011, an Emergency Order To Cease And Desist From Operating A Perpetual Care Cemetery Without A Valid Certificate Of Authority And From Violating Texas Health And Safety Code, effective the date of signing. The order included Findings of Fact and Conclusions that the respondents

DOB Docket 13-11-326
Antioch St. James Cemetery Company, et al.
Proposal for Decision Following Exceptions

Page 10

violated many provisions of the Health and Safety Code and Finance Commission Rules.

[DOB Exhibit 1, pp. 1-6]. The Commissioner ordered the respondents to cease and desist (1)

from the sale of any cemetery spaces or interment rights in the cemetery until the department

confirmed that all violations were corrected, and (2) from all cemetery operations except for

burials for persons who own plots as of the date of the order, and for maintenance of the

property. [Id.]. The commissioner also ordered the respondents to ensure that each burial

allowed under the order occurs in a plot that is exclusively reserved for the use of the current

owner and that all required documentation is properly completed and maintained and sent to

the department within two business days of burial. [Id.].

### BANKING COMMISSIONER'S ENFORCEMENT AUTHORITY

Health and Safety Code Sec. 711.055
(b)     After notice and opportunity for hearing, the commissioner may impose an
administrative penalty on a person who:
          (1)  violates this chapter or a final order of the commissioner or rule of the Finance
          Commission of Texas and does not correct the violation before the 31st day after the
          date the person receives written notice of the violation from the Texas Department of
          Banking; or,                                              ,
          (2)  engages in a pattern of violations, as determined by the commissioner.
(c)     The amount of the penalty for each violation may not exceed $1,000 for each day the
violation occurs.
(d)     In determining the amount of the penalty, the commissioner shall consider the
seriousness of the violation, the person's history of violations, and the person's good faith in
attempting to comply with this chapter. The commissioner may collect the penalty in the same
manner that a money judgment is enforced in district court.

Health and Safety Code Sec. 711.056
(a)   If after a hearing conducted as provided by Chapter 2001, Government Code, the trier of
fact finds that a violation of this chapter or a rule of the Finance Commission of Texas
establishes a pattern of wilful disregard for the requirements of this chapter of rules of the
finance commission, the trier of fact shall recommend to the commissioner that the maximum
administrative penalty permitted under Section 711.055 be imposed on the person committing
the violation or that the commissioner cancel or not renew the person's permit under Chapter
154, Finance Code, if the person holds such a permit.

DOB Docket 13-11-326
Antioch St. James Cemetery Company, et al.
Proposal for Decision Following Exceptions                                    Page 11

(b) For the purposes of this section, violations corrected as provided by Section 711.055 may be included in determining whether a pattern of wilful disregard for the requirements of this chapter or rules of the finance commission exists.

A permit under Chapter 154 of the Finance Code is not involved in this case.

## Health and Safety Code 712.0441

(a) After notice and opportunity for hearing, the commission may impose an administrative penalty on a person who:

    (1) violates this chapter or a final order of the commissioner or rule of the Finance Commission of Texas and does not correct the violation before the 31st day after the date the person receives written notice of the violation from the banking department;

    or,

    (2) engages in a pattern of violations, as determined by the commissioner.

(b) The amount of penalty for each violation may not exceed $1,000 for each day the violation occurs.

(c) In determining the amount of the penalty, the commissioner shall consider the seriousness of the violation, the person's history of violations, and the person's good faith in attempting to comply with this chapter.

## Health and Safety Code Sec. 712.0442

(a) If, after a hearing conducted as provided by Chapter 2001, Government Code, the trier of fact finds that a violation of this chapter or a rule of the Finance Commission of Texas establishes a pattern of wilful disregard for the requirements of this chapter rules of the finance commission, the trier of fact may recommend to the commissioner that the maximum administrative penalty permitted under Section 712.0441 be imposed on the person committing the violation or that the commissioner cancel or not renew the corporation's certificate of authority under this chapter if the person holds such a certificate.

(b) For the purposes of this section, violations corrected as provided by Section 712.0441 may be included in determining whether a pattern of wilful disregard for the requirements of this chapter or rules of the finance commission exists.

## ANALYSIS BY THE ADMINISTRATIVE LAW JUDGE

The evidence proves the occurrence of violations of the laws regulating the operation of a perpetual care cemetery as charged by the staff for each violation, with one exception.

The administrative law judge concludes that the charge of violation of Health and Safety Code §712.0037, which sets forth the conditions for annual renewal of a certificate of authority, does not meet the criteria for imposition of an administrative penalty after a decision not to

DOB Docket 13-11-326
Antioch St. James Cemetery Company, et al.
Proposal for Decision Following Exceptions

Page 12

renew the certificate of authority. Under Section 712.0037(a), the commissioner reviews the holder's application for renewal and determines whether the holder meets the qualifications and requirements for holding a certificate. The charged violation involves one of those requirements. The commissioner may decide not to renew the certificate of authority, which is what happened in this case. The decision not to renew was the consequence for the respondents' failing to meet the requirements of Section 712.0037(a). The administrative law judge concludes that failure to meet the requirements of Section 712.0037(a) is not a violation that is subject to assessment of an administrative penalty after the decision not to renew the respondents' certificate of authority. Operation of a perpetual care cemetery without a certificate of authority is a violation, of course, and that violation is included in the Conclusions of Law. The remaining issues involve the assessment and amount of an administrative penalty.

**The Commissioner Has Discretion To Determine the Amount of Penalty**

Assessment of an administrative penalty is discretionary. Under Health and Safety Code §§711.056 and 712.0441, the Commissioner may assess an administrative penalty of up to $1,000 per day of violation if the responsible person (1) does not correct the violation within 30 days of notification or (2) engages in a pattern of violation. In this case, Mr. Weatherall is responsible for multiple violations that are set forth in the Conclusions of Law, which count in the hundreds and which involve multiple days for most violations. The violations include both those that were not corrected within 30 days of notice and those that establish a pattern of violation. Accordingly, the Commissioner is authorized by Chapters 711 and 712 to assess administrative penalties in an amount greatly exceeding the staff's

recommended range of $56,000 to $70,000 for fourteen violations.

If the trier of fact finds that violations establish a pattern of wilful disregard for the requirements of law, then the trier of fact may under §712.0442(a) and shall under §711.056(a) recommend that the Commissioner impose the maximum administrative penalty permitted or, under Section 712.0442, cancel or not renew the corporation's certificate of authority under this chapter if the person holds such a certificate. The evidence presented at the hearing proved a pattern of wilful disregard concerning the violations. It appears that the main reasons for the continuing violations were ignorance of the law at first, but later was incompetence and an indifference concerning management of the cemetery and the cemetery company. Nevertheless, the evidence proves the factors that support making a finding of wilful disregard. A determination of the issue of wilful disregard would not have a practical impact in this case, however, because the staff has recommended a lesser monetary penalty than what would be the maximum.

The seriousness of the violation, the person's history of violations, and the person's good faith in attempting to comply with the requirements of law are the factors prescribed by §§711.055 and 712.0442 to consider for deciding how much administrative penalty to assess. In this case, the many types of violations cover a range of seriousness. The violations concerning failure to disclose on the sale/purchase agreements the accurate amount to be deposited in the Perpetual Care Trust Fund appear to be low on the seriousness scale. Failure to make timely deposits in the Perpetual Care Trust Fund involve a higher seriousness, but the shortages ultimately were made up. The violations of failure to accurately plat and file for record an accurate plat and of failures to keep accurate burial records are particularly serious,

DOB Docket 13-11-326
Antioch St. James Cemetery Company, et al.
Proposal for Decision Following Exceptions

Page 14

because they are necessary for anyone to locate the graves of those who were buried. It appears that these violations were a factor in some of the complaints. The violation of the Commissioner's Order is a very serious violation. The history of so may violations during a short period of time and of a violation of the Cease and Desist order weighs heavily in favor of a higher penalty. Mr. Weatherall's actions to correct many of the violations and that resulted in the continuing occurrence of violations demonstrates both good faith and a lack of good faith. In addition, it appears that the non-renewal of the certificate of authority and the facts that the respondents have lost ownership of the cemetery property, have terminated the corporation, and are out of the cemetery business, would weigh substantially against a higher amount of penalty.

Ultimately, the evidence supports an administrative penalty in the range that the staff advocated. The evidence shows a very large number of days of violation, with some of the violations being very serious. The evidence also could support a lesser penalty than the minimum of the range that the staff seeks, because of the factors discussed above and because the respondents appear to have acted more in incompetence than in bad faith. Based on the above analysis, the administrative law judge recommends that the Commissioner impose an administrative penalty that is no higher than the low end of the range advocated by the staff.

## FINDINGS OF FACT

Based on the evidence of record and applicable law, the Administrative Law Judge makes the following findings of fact and conclusions of law.

1.    Notice of hearing was timely given to all respondents.

2.    Mr. Gerald Weatherall, Sr., appeared at the hearing individually and as former

President of Antioch St. Johns Cemetery d/b/a American Memorial Park.

3. Ms. Beverly Randall-Weatherall appeared at the hearing as former Vice-President of Antioch St. Johns Cemetery d/b/a American Memorial Park.

4. Antioch St. Johns Cemetery d/b/a American Memorial Park was a perpetual care cemetery that is located on 3.2 acres of land in Grand Prairie, Texas.

5. Antioch St. Johns Cemetery d/b/a American Memorial Park was operated as a corporation beginning in 1958, and is referred to herein as the "cemetery company."

6. Gerald Weatherall, Sr., and Beverly Randall-Weatherall purchased and began operating the cemetery property and the cemetery company in June, 2009.

7. The Secretary of State forfeited the cemetery company's corporate charter as of January, 2011, for failure to pay franchise taxes and reinstated the charter as of November 7, 2011.

8. Antioch St. Johns Cemetery d/b/a American Memorial Park operated as a perpetual care cemetery under Certificate of Authority No. 74.

9. When the Department decided not to renew Certificate of Authority No. 74, it expired as of the March 1, 2012, renewal date.

10. The Commissioner of Banking signed Order No. 2012-011, an Emergency Order to Cease and Desist against the cemetery company, Mr. Weatherall, and Ms. Randall-Weatherall, on May 16, 2012.

11. The respondents did not request a hearing concerning Order No. 2012-011 or otherwise challenge it.

DOB Docket 13-11-326
Antioch St. James Cemetery Company, et al.
Proposal for Decision Following Exceptions

Page 16

12. The cemetery company filed for Chapter 7 bankruptcy after May 16, 2012, but the estate was converted back to the owners because there were no assets to sell in bankruptcy.

13. Mr. Weatherall and Ms. Randall-Weatherall conveyed the cemetery property by deed in lieu of foreclosure to Avery Weatherall after May 16, 2012.

14. The respondents terminated the cemetery company's corporate charter with the Secretary of State after May 16, 2012.

15. Gerald Weatherall, Sr., was president of the cemetery company and exercised an active role as the person and officer who was responsible for the operations of the cemetery and the cemetery company.

16. Beverly Randall-Weatherall was vice-president of the cemetery company but did not exercise an active role in or responsibility for the operations of the cemetery or the cemetery company.

17. The Findings of Fact that are set forth in Order No. 2012-011 support conclusions that the cemetery company and Gerald Weatherall, Sr., individually and as president of the cemetery company, violated provisions of the Health and Safety Code Chapters 711 and 712 and of the Finance Commission Rules that are set forth therein and did not correct the violations within 30 days after receiving notice of them.

18. Staff of the Department's Special Audits Division conducted an examination of the cemetery property and cemetery company as of the close of business on June 30, 2010. The Report of Examination identified violations of applicable

DOB Docket 13-11-326
Antioch St. James Cemetery Company, et al.
Proposal for Decision Following Exceptions

Page 17

law and instructed the respondents to correct the violations no later than September 6, 2010. Staff sent the Report of Examination to the respondents on August 2, 2010.

19.   Staff of the Department's Special Audits Division conducted an examination of the cemetery property and cemetery company as of the close of business on June 30, 2011. The Report of Examination identified violations of applicable law and instructed the respondents to correct the violations no later than November 23, 2011. Staff sent the Report of Examination to the respondents on October 19, 2011. The responsible persons did not timely correct all of the violations.

20.   Staff of the Department's Special Audits Division conducted a limited scope examination of the cemetery property and cemetery company as of the close of business on February 7, 2012, in order to determine the extent to which the respondents had corrected previously noted violations. The Report of Limited Scope Examination identified the extent to which previously noted violations had been corrected and noted additional violations of applicable law and instructed the respondents to notify the department of their actions correcting the violations no later than July 4, 2012. Staff sent the Report of Limited Scope Examination to the respondents on April 30, 2012. The responsible persons did not timely correct all of the violations.

21.   The condition of the cemetery property deteriorated after the respondents began operation of the cemetery and cemetery company. In general, the maintenance

DOB Docket 13-11-326
Antioch St. James Cemetery Company, et al.
Proposal for Decision Following Exceptions

Page 18

of the cemetery was very poor, including the following: an entrance did not have an adequate sign; sections within the cemetery were not adequately marked; graves had collapsed, creating deep sink holes, while there were mounds of dirt in other areas; and, graves had been dug in both directions in some cases.

22.     The respondents corrected some of the individual violations that were set forth in the reports of examination, but did not correct all the violations in each type of violation within the stated deadlines.

23.     Burial cards and the interment register show at least 77 instances of violation of record keeping requirements concerning sales of cemetery plots and burials, which were not corrected within 30 days after notice of the facts of violation was given to the respondents.

24.     The cemetery company records were in such poor shape that it is difficult and probably impossible to determine from the records whose remains were buried in which location. Examples of the deficiencies in the records are shown on Department of Banking Exhibit No. 3 and include:

a.     21 burials shown on the burial cards were not recorded on the interment register;

b.     the interment register reflects two burials in the same space on 8 occasions;

c.     the interment register reflects a burial in a plot on 6 occasions when the burial card for the plot does not show a burial;

d.     on 4 occasions, the burial card shows the burial of a person in a plot and the interment register shows the burial of another person in that plot;

418

e.      on 4 occasions, the burial cards and the interment register show different burial plots for the same person; and,

f.      on 4 occasions, the burial cards and the interment register show different persons were buried in the same burial plot.

25.    The cemetery company on many occasions did not accurately identify on the interment records of the cemetery the plot in which the remains of an individual are interred.

26.    The cemetery company did not record the final disposition of purchase agreements on the historical contract register on many occasions and did not correct the deficiencies within 30 days after notice of the facts of violation was given to the respondents.

27.    The cemetery company did not maintain accurate separate property files in the names of the purchasers of burial plots on many occasions and did not correct the deficiencies within 30 days after notice of the facts of violation was given to the respondents.

28.    The cemetery company repeatedly did not maintain a current financial statement that substantiated the use of income from the Perpetual Care Trust Fund.

29.    The cemetery company consistently did not accurately calculate the amount of money to be deposited in the Perpetual Care Trust Fund.

30.    The cemetery company did not for almost every month of its operation deposit within 20 days after the end of the month in which purchase agreements were paid in full any amount of money in the Perpetual Care Trust Fund. The

DOB Docket 13-11-326
Antioch St. James Cemetery Company, et al.
Proposal for Decision Following Exceptions

Page 20

cemetery company did deposit the required amounts after department staff notified the respondents of the deficiencies.

31. The cemetery company did not disclose on agreements to purchase a cemetery plot the correct amount of money to be deposited in the Perpetual Care Trust Fund on many occasions and did not correct the deficiencies within 30 days after notice of the facts of violation was given to the respondents.

32. The cemetery company did not maintain accurate monthly recapitulations of the interment rights or conveyance of burial plot rights on many occasions and did not correct the deficiencies within 30 days after notice of the facts of violation was given to the respondents.

33. The cemetery company did not prepare and file with the county clerk an accurate map or plat of Section J that showed the cemetery plots and their orientation to the remainder of the cemetery property, including the boundaries of the cemetery property.

34. The cemetery company sold cemetery plots on many occasions without having filed an adequate accurate map or plat of Section J with the county clerk and has not filed such a plat.

35. The cemetery company did not issue to the appropriate person and file in its office the conveyance document after cemetery plots were paid in full on many occasions and often did not correct those deficiencies within 30 days after notice of the facts of violation was given to the respondents.

36. The cemetery company operated and conducted cemetery operations after March 1, 2012.

420

37. The cemetery company did not send notice of the June 14, 2012, burial of Lena Sneed-Holleman to the department within two days as required by Order No. 2012-011.

38. Although Mr. Weatherall attempted to address violations that were brought to his attention, the failure to correct all of the violations and the continual frequent repetition of the several types of violation throughout the time he was responsible for the operations of the cemetery company establishes a pattern of wilful disregard for the requirements of the law that applies to perpetual care cemeteries.

39. The continual occurrences of violations and Mr. Weatherall's actions concerning the operations of the cemetery and the cemetery company were initially more the result of ignorance of the legal requirements and later, of combinations of an inability to accomplish and inattention to the accomplishment of the legal requirements. Mr. Weatherall eventually made up the shortages in the Perpetual Care Trust Fund after the department staff notified him and demanded compliance. He attempted to address the complaints. Some of the record-keeping deficiencies were corrected after notice and demand from the staff. He ultimately gave up the cemetery and cemetery company as a result of financial insolvency. He has continued to pay for some maintenance of the cemetery property.

DOB Docket 13-11-326
Antioch St. James Cemetery Company, et al.
Proposal for Decision Following Exceptions

Page 22

## CONCLUSIONS OF LAW

1. Proper notice of hearing was timely given to Antioch St. James Cemetery Company d/b/a/ American Memorial Park ("cemetery company"), Gerald Weatherall Sr., individually and as president of the cemetery company, and Beverly Randall-Weatherall as vice-president of the cemetery company.

2. The Commissioner of Banking has jurisdiction to enforce the provisions of the Texas Health and Safety Code and Texas Finance Commission Rules concerning the operations of perpetual care cemeteries, specifically with respect to Antioch St. James Cemetery Company d/b/a American Memorial Park, the actions of Gerald Weatherall, Sr., individually and as president of the cemetery company, and the actions of Beverly Randall-Weatherall as vice-president of the cemetery company, and to the violations which are charged in this docket.

3. During the period from 2009 to March 1, 2012, when it was owned and operated by the respondents, Antioch St. James Cemetery d/b/a American Memorial Park was a perpetual care cemetery under Health and Safety Code §711.001(24) that was operated under Certificate of Authority No. 74.

4. Order No. 2012-011, the May 16, 2012, Emergency Cease and Desist Order concerning the respondents in this case, is a final order and its Findings of Fact are taken as true.

5. The responsible persons violated Health and Safety Code §711.003(4) on multiple occasions by failing to accurately identify on the interment records of the cemetery the plot in which the remains of a specific individual was interred

DOB Docket 13-11-326
Antioch St. James Cemetery Company, et al.
Proposal for Decision Following Exceptions

Page 23

and failing to correct the violations within 30 days after receiving notice of the violations from the Department.

6. The responsible persons violated Finance Commission Rule 7 Texas Administrative Code §26(2)(b)(4) on multiple occasions by failing to record the final disposition of purchase agreements on the historical contract register and failing to correct the violations within 30 days after receiving notice of the violations from the Department.

7. The responsible persons violated Finance Commission Rule 7 Texas Administrative Code §26(2)(b)(3) on multiple occasions by failing to maintain separate property files in the names of the purchasers and failing to correct the violations within 30 days after receiving notice of the violations from the Department.

8. The responsible persons violated Finance Commission Rule 7 Texas Administrative Code §26.2(b)(1)(A) on several occasions by failing to maintain a financial statement that substantiates the cemetery's use of trust fund income and failing to correct the violations within 30 days after receiving notice of the violations from the Department.

9. The responsible persons violated Health and Safety Code §712.028(a) on multiple occasions by failing to accurately calculate the amount of perpetual care funds to be deposited and failing to correct the violations within 30 days after receiving notice of the violations from the Department.

DOB Docket 13-11-326
Antioch St. James Cemetery Company, et al.
Proposal for Decision Following Exceptions

Page 24

10. The responsible persons violated Health and Safety Code §712.029(c) on multiple occasions by failing to timely deposit the correct amount of funds into the perpetual care trust fund.

11. The responsible persons violated Health and Safety Code §712.029(a) on multiple occasions by failing to disclose on the purchase agreements the correct amount of perpetual care funds to be deposited in the perpetual care trust fund and failing to correct the violations within 30 days after receiving notice of the violations from the Department.

12. The responsible persons violated Finance Commission Rule 7 Texas Administrative Code §26.2(b)(5) on multiple occasions by failing to maintain accurate monthly recapitulations of all interment rights issued and failing to correct the violations within 30 days after receiving notice of the violations from the Department.

13. The responsible persons violated Health and Safety Code §711.034(a)(1) by failing to accurately survey and map or plat Section J of the cemetery property showing the plots contained within the perimeter boundary and showing a specific unique number for each plot and failing to correct the violations within 30 days after receiving notice of the violations from the Department.

14. The responsible persons violated Health and Safety Code §711.034(b) by failing to file an accurate map or plat of Section J with the county clerk in which the cemetery is located and failing to correct the violations within 30 days after receiving notice of the violations from the Department.

DOB Docket 13-11-326
Antioch St. James Cemetery Company, et al.
Proposal for Decision Following Exceptions

Page 25

15.  The responsible persons violated Health and Safety Code §711.038(a)(1) by selling, conveying, or both selling and conveying the exclusive right of sepulture in a plot in Section J before an accurate map or plat and a certificate or declaration of dedication was filed with the county clerk as provided by Section 711.034 and failing to correct the violations within 30 days after receiving notice of the violations from the Department.

16.  The responsible persons violated Finance Commission Rule §26.5 by failing on multiple occasions, with respect to Section J, to issue a conveyance document for a cemetery plot, as defined by Health and Safety Code §711.001(25), no later than 20 days after the end of the month in which the contract is paid in full and failing to correct the violations within 30 days after receiving notice of the violations from the Department.

17.  The responsible persons violated Health and Safety Code §711.038(c) by failing on multiple occasions, with respect to Section J, to file in the cemetery organizations' office the conveyance of the exclusive right of sepulture in Section J and failing to correct the violations within 30 days after receiving notice of the violations from the Department.

18.  The responsible persons violated Health and Safety Code §712.0032 by operating a perpetual care cemetery after March 1, 2012, without holding a certificate of authority to operate a perpetual care cemetery under Health and Safety Code Chapter 712.

DOB Docket 13-11-326
Antioch St. James Cemetery Company, et al.
Proposal for Decision Following Exceptions

Page 26

19. The responsible persons violated Commissioner Order No. 2012-011 by burying the body of a person on June 14, 2012, and failing to timely send the required documentation to the Department.

20. With respect to the asserted violation of Health and Safety Code §712.0037(a), the responsible person's actions concerning failure to maintain required minimum capital did not amount to a violation of law that is subject to imposition of an administrative penalty after the department decided not to renew the certificate of authority.

21. Gerald Weatherall, Sr., is the person who is responsible, individually and in his capacity as former president of Antioch St. James Cemetery d/b/a American Memorial Park, for the violations of law that are set forth in these Findings of Fact and Conclusions of Law.

22. The Commissioner of Banking in his discretion has the authority under Health and Safety Code Sections 712.0441 and 711.055 to assess an administrative penalty against Antioch St. James Cemetery d/b/a American Memorial Park and Gerald Weatherall, Sr., in his individual capacity and in his capacity as former president of the cemetery company, in the amount of $1,000 for each day of violation.

23. An administrative penalty in the amount of up to $70,000.00 is supported by the evidence under the provisions of Health and Safety Code Sections 711.055, 711.056, 712.0441, and 712.0442.

Order No. 2013-028
Docket No. BE-13-11-326

| | | |
|---|---|---|
| IN THE MATTER OF ANTIOCH | § | BEFORE THE BANKING |
| ST. JOHNS CEMETERY COMPANY | § | |
| d/b/a AMERICAN MEMORIAL PARK, | § | |
| GRAND PRAIRIE, TEXAS, (Certificate | § | |
| of Authority No. 74, expired); | § | |
| | § | |
| GERALD WEATHERALL, SR., AS ITS | § | COMMISSIONER OF TEXAS |
| PRESIDENT AND IN HIS INDIVIDUAL | § | |
| CAPACITY; AND, | § | |
| | § | |
| BEVERLY RANDALL-WEATHERALL | § | |
| AS ITS VICE-PRESIDENT | § | AUSTIN, TRAVIS COUNTY, TEXAS |

## FINAL ORDER

On this __25th__ day of November, 2013 came on to be considered Docket No. BE-13-11-326. After reviewing the administrative record and the Proposal for Decision Following Exceptions issued by the Administrative Law Judge on November 12, 2013, I have determined that the Findings of Fact and Conclusions of Law are supported by the evidence of record and applicable law.

I, therefore, ADOPT the Proposal for Decision Following Exceptions, including specifically the Findings of Fact and Conclusions of Law that are set forth in the Proposal for Decision Following Exceptions and incorporate in this Order the Findings of Fact and Conclusions of Law therein as if set out in full in this Order.

Based on the record and the Findings of Fact and Conclusions of Law, I conclude that an administrative penalty in the amount of $56,000 is justified and appropriate under the factors required by law.

It is, therefore, ORDERED that an administrative penalty in the amount of $56,000 be and is hereby ASSESSED against respondents Antioch St. Johns Cemetery Company d/b/a American Memorial Park, and Gerald Weatherall, Sr., in his individual capacity and in his capacity of former President of Antioch St. Johns Cemetery Company d/b/a American Memorial Park.

Respondents Antioch St. Johns Cemetery Company d/b/a American Memorial Park, and Gerald Weatherall, Sr., in his individual capacity and in his capacity of former President of Antioch St. Johns Cemetery Company d/b/a American Memorial Park, jointly and severally, are ORDERED to pay an administrative penalty of $56,000 to the Texas Department of Banking.

All relief that was requested but not granted or otherwise disposed of herein is denied.

SIGNED and ENTERED this 25ᵗʰ day of November, 2013.

Charles G. Cooper
Banking Commissioner

DOB Docket 13-11-326
Antioch St. Johns Cemetery Company, et al
Final Order